CHERYL D. ORR (SBN 143196)
cheryl.orr@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111
Telephone: +1 415 591 7500
Facsimile: +1 415 591 7510

Attorneys for Defendant
BMW OF NORTH AMERICA, LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC RAPISURA, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware limited liability company; and DOES 1 TO 50,<br><br>Defendants. | Case No. 22-cv-00268<br><br>[San Joaquin County Superior Court Case No. STK-CV-40E-2022-861]<br><br>**BMW OF NORTH AMERICA, LLC'S NOTICE OF REMOVAL AND REMOVAL OF CIVIL ACTION TO FEDERAL COURT** |

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACTIVE.135666241.01
BMW OF NORTH AMERICA, LLC'S NOTICE OF
REMOVAL & REMOVAL TO FEDERAL COURT

CASE NO. 22-CV-00268

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE THAT Defendant BMW of North America, LLC ("BMW" or "Defendant"), by and through its undersigned counsel, hereby removes the above-captioned action from the California Superior Court for San Joaquin County to the United States District Court in and for the Eastern District of California. This Removal is pursuant to 28 U.S.C. §§ 1332(d) (the "Class Action Fairness Act" or "CAFA"), 1441, and 1453, and the below:

## PLEADING AND SERVICE

1. On February 3, 2022, Plaintiff Isaac Rapisura ("Plaintiff" or "Rapisura"), individually and on behalf of all others similarly situated, filed the operative Class Action Complaint (the "Complaint") in the California Superior Court for the County of San Joaquin County, entitled "ISAAC RAPISURA V. BMW OF NORTH AMERICA, LLC, and DOES 1-50, inclusive," designated as San Joaquin Superior Court Case No. STK-CV-40E-2022-861.

2. In the Complaint, Plaintiff asserts nine purported causes of action on behalf of a putative class of all individuals who are or were employed by Defendant(s) as non-exempt employees in California. Those causes of action are: (1) failure to pay all minimum wages, (2) failure to pay all overtime wages, (3) failure to provide rest periods and pay missed rest period premiums, (4) failure to provide meal periods and pay missed meal period premiums, (5) failure to maintain accurate employment records, (6) failure to pay wages timely during employment, (7) failure to pay all wages earned and unpaid at separation, (8) failure to furnish accurate itemized wage statements, and (9) violations of California's Unfair Competition Law (Bus. & Prof. Code,§§ 17200-17210). A copy of the Complaint is attached hereto as **Exhibit A**.

3. On February 8, 2022 Plaintiff served a copy of the Complaint and Summons on Defendant by personal service. True and correct copies of all documents served on BMW in this action are attached hereto as **Exhibit B**, including the Summons, Complaint, Civil Case Coversheet, and ADR Packet.

4. On March 10, 2022 Defendant filed and served its Answer to Plaintiff's Complaint. A copy of the Answer is attached hereto as **Exhibit C**.

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACTIVE.135666241.01
BMW OF NORTH AMERICA, LLC'S NOTICE OF REMOVAL & REMOVAL TO FEDERAL COURT
- 2 -
CASE NO. 22-CV-00268

5.     **Exhibits A and B** constitute all process, pleadings, and orders served upon Defendant in this action.

### TIMELINESS OF REMOVAL

6.     Pursuant to 28 U.S.C. § 1446(b), a party must file a notice of removal of a civil action or proceeding "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." The date upon which the 30-day period within which a party must remove an action begins to run is determined by the date upon which service of process is deemed effective under state law. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999); *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005).

7.     Here, Plaintiff served on Defendant a copy of the summons and Complaint by personal service pursuant to California Code of Civil Procedure 415.10 ("Section 415.10") on February 8, 2022. Section 415.10 authorizes service of process on a party by "personal delivery of a copy of the summons and of the complaint to the person to be served." Cal. Civ. Proc. Code § 415.10. Service of process by mail is "deemed complete at the time of such delivery." *Id*. Accordingly, service of the summons and Complaint under California law became effective as of February 8, 2022.

8.     Pursuant to 28 U.S.C. § 1446(b), Defendant has timely filed this Notice of Removal within thirty (30) days of Plaintiff's purported service of the Summons and Complaint.

### VENUE

9.     San Joaquin County, California is located within the Eastern District of California. Thus, venue is proper pursuant to 28 U.S.C. § 84(a) because this is the "district and division embracing the place where [Plaintiff's] action is pending." 28 U.S.C. § 1441(a).

### JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT

10.     Defendant removes this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"). CAFA provides the Federal District Courts with original jurisdiction over civil class action lawsuits filed under federal or state law in which any member

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACTIVE.135666241.01
BMW OF NORTH AMERICA, LLC'S NOTICE OF REMOVAL & REMOVAL TO FEDERAL COURT

- 3 -

CASE NO. 22-CV-00268

of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5 million exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). The exceptions set forth in 28 U.S.C. § 1332(d)(3)–(5) are not applicable here.

11. This action was initially brought as a class action pursuant to California Code of Civil Procedure section 382. Compl. ¶ 1. Plaintiff defines the purported class as "[a]ll individuals who are or were employed by Defendants as non-exempt employees in California during the Class Period," or the period of time four years prior to the filing of the Complaint (February 3, 2022) to the present. Compl. ¶¶ 2-3.

12. This Court has original jurisdiction over the case under 28 U.S.C. § 1332(d)(2) because the case is filed as a civil class action, the proposed class contains at least 100 members, the amount in controversy exceeds $5 million exclusive of interest and costs, and at least one member (if not all) of the class of plaintiffs is a citizen of a state different from Defendant.

**A. DIVERSITY OF CITIZENSHIP EXISTS AMONG THE PARTIES**

13. Pursuant to 28 U.S.C. § 1453(b), "A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants." CAFA's diversity requirement is satisfied when any member of a class of citizens is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d)(2).

14. Defendant is informed and believes that Plaintiff has been a resident of California at all times relevant to this matter. *See* Complaint ¶ 10 ("At all relevant times, Plaintiff…was and currently is a citizen of California residing in the State of California."). For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Therefore, Plaintiff is a citizen of California.

15. Plaintiff alleges that the proposed class consists of "[a]ll individuals who are or were employed by Defendants as non-exempt employees in California during the Class Period,"

or the period of time four years prior to the filing of the Complaint (February 3, 2022) to the present.  Compl. ¶ 3.

16.  BMW is, and was at the time the Complaint was filed, a privately-held Delaware limited liability company with its principle place of business located in Woodcliff Lake, New Jersey.  Declaration of Megan Hernandez ("Hernandez Decl."), ¶ 4.  BMW is a wholly owned subsidiary of BMW (US) Holding Corp., which is the sole member of BMW, and is incorporated under the laws of Delaware, and has its headquarters and principal place of business in the State of New Jersey.  *Id*.  Accordingly, BMW is a citizen of Delaware and New Jersey.

17.  The citizenship of fictitious defendants is disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  28 U.S.C. § 1441(b)(1).

18.  Here, diversity of citizenship is met because Plaintiffs and at least some, if not all, of the putative class members are citizens of California while Defendant is a citizen of Delaware and New Jersey.  *See* 28 U.S.C. § 1332(d)(2)(A).

**B. THERE ARE MORE THAN 100 PUTATIVE CLASS MEMBERS**

19.  Plaintiff states in his Complaint that "[t]he membership of the class is unknown to [him] at this time," but he estimates that there are more than 100 individuals.  Compl. ¶ 62.  BMW asserts that over 100 individuals have been employed by BMW as non-exempt employees in California from February 3, 2018 to the present.  Hernandez Decl. ¶ 3; Declaration of Kristin Halsing ("Halsing Decl."), ¶ 2.

**C. THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION**

20.  Without specifying the exact amount in monetary damages sought, Plaintiff alleges that the matter in controversy exceeds the minimal jurisdictional limits of the Superior Court.  Compl. ¶ 6.  Plaintiff also states that "the amount in controversy for Plaintiff's and the Class Members' claims, in aggregate, is less than $5 million," and that "even if the amount in controversy did exceed $5 million this matter would still not be appropriate for removal under the 'local controversy' exception to the Class Action Fairness Act.  (28 U.S.C. § 1332, subd. (d)(4)(A).)"  Compl. ¶ 9.

21.  Under CAFA, the claims of individual putative class members are aggregated to

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACTIVE.135666241.01
BMW OF NORTH AMERICA, LLC'S NOTICE OF REMOVAL & REMOVAL TO FEDERAL COURT
- 5 -
CASE NO. 22-CV-00268

1  determine if the amount in controversy exceeds the sum or value of $5,000,000. See 28 U.S.C. § 1332(d)(6). To establish that the amount in controversy under CAFA, a defendant need only make a plausible claim that the amount in controversy exceeds $5,000,000. *Dart Cherokee Basin Operating Co.*, LLC v. Owens, 135 S. Ct. 547 (2014). Where a plaintiff alleges an amount in controversy of less than $5 million, the court is to ignore the allegation, treat the complaint as having not specified an amount in controversy, and, thus, apply a preponderance of the evidence standard. *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1350 (2013); *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 978-82 (9th Cir. 2013).

22. Furthermore, the "local controversy" exception under 28 U.S.C. section 1332(d)(4)(A) does not apply here. That subdivision states that the district court must decline CAFA jurisdiction:

> (i) over a class action in which—
>
>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II) at least 1 defendant is a defendant—
>>
>>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>>
>>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>>
>>> *(cc) who is a citizen of the State in which the action was originally filed; and*
>>
>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(emphasis added). In this case, BMW is not a citizen of California. Accordingly, subsection (4)(A)(i)(II)(cc) is not met, and the exception to CAFA jurisdiction under 28 U.S.C. section

1332(d)(4)(A) does not apply.

23. Without admitting any allegations in the Complaint, and without conceding that Plaintiffs' definition of the putative class is proper or that class certification is appropriate, Defendant states that Plaintiffs have alleged claims which place an amount in excess of $5 million in controversy. The assertions of Defendant herein are limited to its preliminary understanding of Plaintiffs' claims and data currently available to Defendant.

24. Plaintiff states in his Complaint that "[t]he membership of the class is unknown to [him] at this time," but he estimates that there are more than 100 individuals. Compl. ¶ 62. Plaintiff proposes a class consisting of "[a]ll individuals who are or were employed by Defendants as non-exempt employees in California during the Class Period." Compl. ¶ 3. BMW asserts that over 100 individuals have been employed as non-exempt employees in California from February 3, 2018 to the present.

25. Plaintiff alleges that Defendant failed to pay them and the putative class members overtime and minimum wages, did not provide meal and rest breaks, did not maintain accurate employment records, did not pay wages timely during employment and at termination, failed to provide accurate itemized wage statements, and engaged in unfair business practices in violation of California Business and Professions Code § 17200 (the "UCL"). Compl. ¶ 4. Plaintiff claims that he and the putative class members are entitled to overtime wages; compensatory, consequential, general, and special damages; meal and rest period premiums; penalties for failure to maintain accurate employment records; penalties for failure to pay wages during employment; waiting time penalties, restitution pursuant to Business and Professions Code sections 17200 through 17210; prejudgment interest; attorneys' fees; injunctive relief; and "such other and further relief, this Court may deem just and proper." *Id.* at pp. 26-28.

### a. Minimum Wage Claim

26. Plaintiff alleges that he and other putative class members are entitled to the unpaid balance of any minimum wages not provided, as well as liquidated damages, under Labor Code sections 1194 and 1194.2. Compl. ¶¶ 71-75. Section 1194 provides that "any employee

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACTIVE.135666241.01
BMW OF NORTH AMERICA, LLC'S NOTICE OF REMOVAL & REMOVAL TO FEDERAL COURT

- 7 -

CASE NO. 22-CV-00268

receiving less than the legal minimum wage…applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Lab. Code § 1194(a). Section 1194.2 states that "[i]n any action under Section 98, 1193.6, 1194, or 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code § 1194.2(a).

27. BMW has over 26 employees. Hernandez Decl. ¶ 2. Accordingly, the minimum was for BMW employees in California was $11.00/hour in 2018, $12.00/hour in 2019, $13.00/hour in 2020, and $14.00/hour in 2021, for an average of $12.50/hour for the entire class period. Cal. Lab. Code § 1182.12. BMW estimates that class members worked a total of approximately 12,184 pay periods from February 3, 2018 to the present. Declaration of Kristin Halsing Decl., ¶ 2. Class members are paid biweekly. Hernandez Decl. ¶ 3.

28. Defendant estimates that Plaintiff's claim for minimum wages, not including liquidated damages, could total $304,600. This figure is based on an estimated 2 hours of unpaid minimum wages per pay period (1 hour per workweek) at an estimated rate of $12.50 (the average minimum wage for 2018, 2019, 2020, and 2021).[1] Adding liquidated damages in that same amount totals **$609,200.00.**

29. BMW's estimate of 1 hour of unpaid minimum wages per week per class member is reasonable and certain. In the Complaint, Plaintiff states that putative class members "were not compensated for all hours worked." Compl. ¶ 23. Plaintiff additionally alleges that putative class members "were not paid for all hours worked due to [BMW's] uniform payroll policies and practices that unfairly rounded employees' wages to the detriment of the Class Members," and that such a "rounding policy *routinely* failed to capture the entirety of the hours the Class Members worked and was structured in a way that in favored [*sic*] underpayment." Compl. ¶ 24, emphasis added. Plaintiff alleges that, as a result, putative class members "suffered periodic

---

[1] ($12.50 x 2) x 12,184 = $304,600

shortages in the hours for which they were compensated." Compl. ¶ 24. Given that, BMW's estimate of 1 hour per week is, if anything, conservative. *See Cabrera v. South Valley Almond Company, LLC*, 2021 WL 5937585 at *8 (E.D. Cal. Dec. 16, 2021) ("[Defendant's] assumptions of one hour of unpaid overtime per week and one hour of unpaid minimum wages per week are consistent with allegations that violations occurred 'at times' and 'on occasion,' particularly since the Complaint alleges that the Labor Code violations at issue in this case are due to 'policies and/or practices' on the part of Defendants.").

### b. Overtime Claim

30.  Plaintiff alleges that he and other putative class members are entitled to unpaid overtime premiums pursuant to Labor Code sections 510 and 1194. Compl. ¶ 78. Section 510 provides that "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee," that "[a]ny work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee," and that "any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee." Cal. Lab. Code § 510(a). Section 1194 states that "any employee receiving less than…the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this…overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Lab Code § 1194(a).

31.  As stated above, BMW estimates that class members worked a total of approximately 12,184 pay periods from February 3, 2018 to the present. Halsing Decl. ¶ 2. Class members are paid biweekly. Hernandez Decl. ¶ 3. The average hourly rate of all putative class members is approximately $25.28.[2] Halsing Decl. ¶ 2.

32.  Defendant estimates that Plaintiff's claim for overtime wages could total

---

[2] Calculated with the current hourly rate of current employees and the final hourly rate of former employees.

1  **$924,034.56.** This figure is based on an estimated 2 hours of unpaid overtime wages per pay period (1 hour per workweek).[3]

33. As with Plaintiff's claim for unpaid minimum wages, BMW's estimate of 1 hour of overtime per week per class member is reasonable and certain. In the Complaint, Plaintiff states that putative class members "periodically worked hours that entitled them to overtime compensation under the law but were not fully compensated for those hours." Compl. ¶ 32. Plaintiff additionally alleges that he and putative class members were not compensated at one and a half times their regular rate of pay and at twice their regular rate of pay for overtime they worked. Compl. ¶ 77. Given that, BMW's estimate of 1 hour per week is, if anything, conservative. *See Cabrera*, 2021 WL 5937585 at *8 ("[Defendant's] assumptions of one hour of unpaid overtime per week and one hour of unpaid minimum wages per week are consistent with allegations that violations occurred 'at times' and 'on occasion,' particularly since the Complaint alleges that the Labor Code violations at issue in this case are due to 'policies and/or practices' on the part of Defendants."). Indeed, BMW's estimate does not even take into account any alleged double time owed to Plaintiff and putative class members, which would increase the amount in controversy.

### c. Meal and Rest Period Premiums Claim

34. Plaintiff alleges that he and other putative class members are owed rest and meal period premiums at their regular rates of pay under Labor Code section 226.7. Compl. ¶¶ 81, 84. Section 226.7 states that "[i]f an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." Cal. Lab. Code § 226.7. In other words, Plaintiff and putative class members may be entitled to up to one meal period premium per day, and one rest period premium per day.

35. As stated above, BMW estimates that class members worked a total of

---

[3] ($25.28 x 1.5) x 2 x 12,184 = $924,034.56

1  approximately 12,184 pay periods from February 3, 2018 to the present.[4]  Halsing Decl. ¶ 2.

2  Class members are paid biweekly. Hernandez Decl. ¶ 3.  The average hourly rate of all putative

3  class members is approximately $25.28.  Halsing Decl. ¶ 2.

4  36.  Defendant estimates that Plaintiff's claims for meal and rest period premiums

5  could total **$1,232,046.08**.  This figure is based on an estimated 4 meal and/or rest premiums per

6  pay period (2 meal and/or rest premiums per week).[5]

7  37.  BMW's estimate of 2 meal and/or rest period premiums per week is proper.

8  Plaintiff alleges that BMW "periodically did not permit" putative class members to take

9  compliant meal and rest breaks.  Compl. ¶¶ 37, 43.  Plaintiff specifically alleges that putative

10  class members were "often expected and required to continue working through rest periods," and

11  "[i]n some cases" when putative class members worked more than ten hours in a shift, they were

12  not provided a third rest period.  Compl. ¶ 37.  He alleges that "[a]s a result of [BMW's] uniform

13  meal period policies and practices," putative class members "were often not permitted to take

14  compliant first meal periods…[and] were also periodically not permitted to take second meal

15  periods for shifts in excess of ten hours."  Compl. ¶ 45.  Put simply, Plaintiff alleges a variety of

16  ways that putative class members were not provided meal and rest periods.  Assuming that

17  putative class members worked five days per week, an estimate of 2 meal and/or rest periods per

18  week assumes a 20% violation rate.[6]  Accordingly, an estimate of 2 meal and/or rest period

19  premiums per week is, if anything, an underestimate. *See Cabrera*, 2021 WL 5937585 at *6

20  (assuming a 20% meal and rest period violation rate was "consistent with language in the

21  Complaint stating that violations occurred 'at times,'" especially because plaintiff sought

22  "payment in connection with all forms of break-related violations (missed, delayed, interrupted or

23  incomplete"); *see also Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629 at *2 (C.D. Cal. Mar.

24  19, 2019) ("When a defendant's calculation lacks factual support, courts in this district routinely

25  apply a 20% violation rate—that is, one missed meal and rest period per work week—for meal

---

[4] For purposes of Removal, BMW assumes that meal and rest period premiums may form the basis for a claim under the UCL.  BMW does not concede that point for any other purpose.

[5] $25.28 x 12,184 x 4 = $1,232,046.08

[6] 20% of the possible 10 premiums per week (5 rest period premiums and 5 meal period premiums).

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACTIVE.135666241.01
BMW OF NORTH AMERICA, LLC'S NOTICE OF REMOVAL & REMOVAL TO FEDERAL COURT
- 11 -
CASE NO. 22-CV-00268

and rest period premiums.").

**d. Wage Statements**

38.     Plaintiff alleges that he and other putative class members were not provided accurate wage statements pursuant to Labor Code section 226(a).  Compl. ¶ 103.  Specifically, Plaintiff alleges that because BMW failed to pay him and putative class members properly, BMW also "failed to include required information on their wage statements, including, but not limited to, the gross wages earned, [and] the net wages earned." *Id*.  Labor Code section 226(e) states that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Cal. Lab. Code § 226(e)(1).

39.     The statute of limitations for claims under 226(a) and (e) is one year.  Cal. Code Civ. Proc. § 340(a).  BMW estimates that 363 putative class members worked for BMW from February 3, 2021 to the present.  Halsing Decl. 3.  While BMW does not currently know how many wage statements have been issued since February 3, 2021, BMW estimates that putative class members have worked approximately 7,773 pay periods since that date.  Halsing Decl. ¶ 3.

40.     BMW estimates that Plaintiff's wage statement claim could total up to **$759,150.00**.  This figure is based on an assumption that every wage statement issued during the relevant period was inaccurate and/or incomplete.[7]

41.     BMW's calculation assuming an inaccurate and/or incomplete wage statement for every pay period is proper.  Plaintiff bases his wage statement claim on his allegations that BMW failed to pay him and putative class member properly, and alleges that his and putative class members' wage statements "do not indicate the correct amount of gross wages earned, total hours worked,…net wages earned, or the applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." Compl. ¶ 55.  Plaintiff also alleges

---

[7] $(7,773 \times \$100) - (363 \times \$50) = \$759,150.00$

that BMW's failure to provide accurate wage statements was "knowing[] and intentional[]" in violation of section 226(e).  Given the number of possible types of errors described in the Complaint, and the allegation that such errors were willful, it is reasonable to calculate wage statement penalties based on every wage statement being incorrect.[8]  *See Cabrera*, 2021 WL 5937585 at *10  (because the court found that it was "reasonable to assume one overtime violation, one minimum wage violation, one meal break violation and one rest period violation per week for each putative class member…[i]t follow[ed] that each of the bi-weekly wage statements Defendants issued to putative class members during the period in question contained an error of some sort"; and it was "reasonable to include $100 penalties for 'subsequent' violations" because plaintiff alleged that defendants' failure to provide accurate wage statements "was knowing intentional, and willful").

### e. Failure to Pay Wages During Employment

42.     Plaintiff alleges that he and putative class members were not paid timely during employment in violation of Labor Code section 204, and that, they therefore are entitled to penalties under Labor Code section 210.  Compl. ¶¶ 91-95.  Specifically, he alleges that BMW's "pattern, practice, and uniform administration of its corporate policy of illegally denying employees compensation, as described herein," entitles him and putative class members to penalties under section 210.  *Id*. at ¶ 95.  Labor Code section 204 provides that all wages, with limited exceptions, are "due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."  Cal. Lab. Code § 204(a).  Labor Code section 210 provides that "every person who fails to pay the wages of each employee as provided in Section[]…204… shall be subject to a penalty as follows: (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld." Cal. Lab. Code § 210(a).[9]

---

[8] For purposes of calculations for Removal, BMW assumes that all of Plaintiff's wage claims (including claims for unpaid meal and rest penalties) may form the basis for a wage statement claim.  BMW does not concede that point for any other purpose.

[9] For purposes of calculations for Removal, BMW assumes that Plaintiff has properly brought this cause of action.  BMW does not concede that point for any other purpose.

ACTIVE.135666241.01
BMW OF NORTH AMERICA, LLC'S NOTICE OF REMOVAL & REMOVAL TO FEDERAL COURT — - 13 - — CASE NO. 22-CV-00268

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

43. As a penalty, the statute of limitations for penalties under section 210 is one year. Cal. Code Civ. Proc. § 340(a). BMW estimates that 363 class members worked for BMW from February 3, 2021 to the present. Halsing Decl. 3. While BMW does not currently know how many wage statements have been issued since February 3, 2021, BMW estimates that putative class members have worked approximately 7,773 pay periods since that date. Halsing Decl. ¶ 3.

44. BMW estimates that Plaintiff's claim for failure to pay wages during employment could total up to **$1,518,300.00.** This figure is based on an assumption that some wages were unpaid during every pay period.[10]

45. For the same reasons as BMW's calculation for Plaintiff's wage statement claim, assuming missing wages for every pay period is proper. Plaintiff bases his claim for failure to pay timely wages on his allegations that BMW failed to pay him and putative class member properly. Compl. ¶ 51. He states that BMW failed to timely pay putative class members "on a regular and consistent basis." *Id*. Given the number of possible types of errors described in the Complaint, it is reasonable to calculate penalties under Labor Code section 210 based on there being unpaid wages every pay period.[11] *See Cabrera*, 2021 WL 5937585 at *10 (because the court found that it was "reasonable to assume one overtime violation, one minimum wage violation, one meal break violation and one rest period violation per week for each putative class member…[i]t follow[ed] that each of the bi-weekly wage statements Defendants issued to putative class members during the period in question contained an error of some sort"). Indeed, this calculation does not take into account the 25% of allegedly withheld wages that Plaintiff may claim, which will increase the amount in controversy.

**f. Waiting Time Penalties**

46. Plaintiff alleges that "[d]ue to [BMW's] faulty pay policies," putative class members who are former employees "were not compensated for each and every hour worked at the appropriate rate," and therefore that BMW has "willfully failed to pay" them properly at

---

[10] (7,773 x $250) – (363 x $150) = $ $1,518,300.00
[11] For purposes of calculations for Removal, BMW assumes that all of Plaintiff's wage claims (including claims for unpaid meal and rest penalties) may form the basis for a claim for failure to timely pay wages during employment. BMW does not concede that point for any other purpose.

ACTIVE.135666241.01
BMW OF NORTH AMERICA, LLC'S NOTICE OF REMOVAL & REMOVAL TO FEDERAL COURT - 14 - CASE NO. 22-CV-00268

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

termination in violation of Labor Code sections 201 through 203. Compl. ¶ 99. Plaintiff alleges that BMW is liable to formerly employed putative class members "for waiting time penalties amounting to thirty days wages…pursuant to Labor Code section 203." Compl. ¶ 100. Labor Code section 201 states that if an employee is terminated, "wages earned and unpaid at the time of the discharge are due and payable immediately." Cal. Lab. Code § 201(a). Labor Code section 202 states that an employee who quits must be paid all unpaid wages no later than 72 hours after resignation, "unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting." Cal. Lab. Code § 202(a). Labor Code section 203 states that "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201…[or] 202…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a).

47. The statute of limitations for waiting time penalties is three years. *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1398 (2010). BMW estimates that there are 120 putative class members who have been discharged or quit during that period (February 3, 2019 through the present). Halsing Decl. ¶ 4. The average hourly rate of pay for those employees at the time of termination was $21.84. Halsing Decl. ¶ 4.

48. BMW estimates that Plaintiff's claim for waiting time penalties could total up to **$628,992.00.** This figure is based on an assumption that former employees worked 8-hour shifts.[12]

49. Assuming that all former employees were owed waiting time penalties is proper. Plaintiff himself alleges that BMW is "liable to the formerly-employed Class Members." Compl. § 100. He does not state that only some formerly employed putative class members are owed waiting time penalties, but that they *all* are. Furthermore, as with his wage statement claim and claim for failure to pay wages timely during employment, Plaintiff's claim for waiting time penalties is premised on BMW's "faulty pay policies." Compl. ¶ 100. Given the number of

---

[12] ($21.84 x 8 x 30) x 120 = $628,992.00

ACTIVE.135666241.01
BMW OF NORTH AMERICA, LLC'S NOTICE OF REMOVAL & REMOVAL TO FEDERAL COURT — - 15 - — CASE NO. 22-CV-00268

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

possible types of errors described in the Complaint, it is reasonable to calculate waiting time penalties as being owed to all former employees.[13] *See Cabrera v. South Valley Almond Company, LLC*, 2021 WL 5937585 at *10 (E.D. Cal. Dec. 16, 2021) (because the court found that it was "reasonable to assume one overtime violation, one minimum wage violation, one meal break violation and one rest period violation per week for each putative class member…[i]t follow[ed] that each of the bi-weekly wage statements Defendants issued to putative class members during the period in question contained an error of some sort").

### g. Attorneys' Fees

50.     Based on the figures above, which represent BMW's current best assessment of Plaintiff's claims based on the allegations in the Complaint, the total amount of relief sought by Plaintiff, exclusive of interest, costs, and attorneys' fees, is approximately **$ 5,671,722.64.** Because the Court is to consider attorneys' fees when assessing whether a complaint meets the amount in controversy requirement (*Goldberg v. C.P.C. Int'l, Inc.,* 678 F.2d 1365, 1367 (9th Cir. 1982)), and because attorneys' fees in a class action case of this size may exceed a third of the class recovery, Defendant estimates that an additional $ **964,054.26** is in controversy.[14] Altogether, Plaintiff has placed at least **$ 6,635,776.90** in controversy.[15]  Thus, although BMW denies any liability to Plaintiffs or the putative class and denies that any such class could properly be certified under Federal Rule of Civil Procedure 23, as set forth above, the alleged aggregate amount in controversy in this class action exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332 (d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").[16]

---

[13] For purposes of calculations for Removal, BMW assumes that all of Plaintiff's wage claims (including claims for unpaid meal and rest penalties) may form the basis of his claim for waiting time penalties. BMW does not concede that point for any other purpose.

[14] ($924,034.56 + $609,200.00 + $759,150.00 + 628,992.00) x .33 = 964,054.26.  This calculation does not take into account the amounts allegedly recoverable for alleged meal and rest break violations and failure to pay wages during employment.

[15] The amount in controversy is met even if the court considers a lower percentage of attorneys' fees.  At 25% attorneys' fees, the attorneys fees allocated would be 730,344.14, for a total amount in controversy of 6,402,066.78.

[16] Defendant notes that the scope of Plaintiff's proposed class includes individuals who worked for BMW from February 3, 2018, "continuing into the present and ongoing." As such, the size of

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACTIVE.135666241.01
BMW OF NORTH AMERICA, LLC'S NOTICE OF REMOVAL & REMOVAL TO FEDERAL COURT     - 16 -     CASE NO. 22-CV-00268

## JOINDER OF ALL DEFENDANTS

51. BMW is the only named defendant in the Complaint, and this Removal is authorized by BMW.

52. BMW is informed and believes, and on that basis alleges, that none of the "Doe" defendants in this action have been named or served. Therefore, it is not necessary to obtain any other defendant's consent to, or joinder in, this Removal.

## NOTICE TO STATE COURT AND ADVERSE PARTY

53. Defendant will promptly file written notice of this Removal with the clerk of the state court in which the action is currently pending pursuant to 28 U.S.C. § 1446(d). A copy of this Notice of Removal will be promptly served upon Plaintiff's counsel pursuant to 28 U.S.C. § 1446(d).

54. Defendant has complied with 28 U.S.C. §§ 1446(a) and (d). Under 28 U.S.C. § 1446(a), a true and correct copy of all of the process, pleadings, and orders on file in state court or served on Defendant in the state court are provided as Exhibits A and B.

55. By removing the action to this Court, Defendant does not waive any defenses, objections, or motions available to it under state or federal law. Defendant expressly reserves the right to require that the claims of Plaintiffs and all members of the putative class be decided on an individual basis.

56. In the event that any questions should arise with regard to the propriety of the removal of this action, BMW respectfully requests the opportunity to present evidence in support of its position that removal is proper.

WHEREFORE, pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1453, Defendant hereby removes this action from the California Superior Court for San Joaquin County to the United States District Court in and for the Eastern District of California. Defendant prays for such other and further relief to which they may be entitled, both at law and in equity, both general and

---

the putative class, the number of workweeks and pay periods, and the amount in controversy will continue to expand as the case is litigated. As a result, the amount in controversy is actually greater than the amount set forth in this Notice of Removal because there will be more individuals in the putative class and more workweeks and pay periods at issue than accounted for in the above calculations.

ACTIVE.135666241.01
BMW OF NORTH AMERICA, LLC'S NOTICE OF REMOVAL & REMOVAL TO FEDERAL COURT
- 17 -
CASE NO. 22-CV-00268
FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

special.

Dated: March 10, 2022                         FAEGRE DRINKER BIDDLE & REATH LLP


By: /s/ *Cheryl D. Orr*
     Cheryl D. Orr

Attorneys for Defendant
BMW OF NORTH AMERICA, LLC

FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ACTIVE.135666241.01
BMW OF NORTH AMERICA, LLC'S NOTICE OF REMOVAL & REMOVAL TO FEDERAL COURT

- 18 -

CASE NO. 22-CV-00268