UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ISAAC RAPISURA, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware limited liability company; and DOES 1 TO 50,<br><br>Defendants. | No. 2:22-cv-00455 WBS AC<br><br>MEMORANDUM AND ORDER RE: MOTION TO REMAND |

----oo0oo----

Plaintiff Isaac Rapisura commenced this class action against defendant BMW of North America alleging violations of the California Labor and Business and Professions Codes.  Defendant removed the action from San Joaquin County Superior Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (Notice of Removal ("Notice") (Docket No. 1).) Plaintiff now moves to remand pursuant to 28 U.S.C. § 1447, contending that defendant has not established that the amount in

1

controversy exceeds $5,000,000.  (Mot. to Remand (Docket No. 6).)

I.   Background

Plaintiff seeks to represent a class of current and former non-exempt California-based employees who were employed by defendant since February 3, 2018.  (Notice, Ex. A ("Compl.") (Docket No. 1-1).)  Plaintiff alleges the following nine claims: (1) failure to pay all minimum wages, Cal. Lab. Code § 1197; (2) failure to pay all overtime wages, id. §§ 510, 1194; (3) failure to provide rest periods and pay rest period premiums, id. § 226.7; (4) failure to provide meal periods and pay meal period premiums, id. §§ 226.7, 512; (5) failure to maintain accurate employment records, id. § 1174 (6) failure to pay wages timely during employment, id. §§ 204, 210; (7) failure to pay owed wages at time of separation, id. §§ 201, 202; (8) failure to furnish accurate itemized wage statements, id. § 226; and (9) violation of California's Unfair Competition Law, Cal. Bus. & Professions Code § 17200.  (Compl. ¶ 4.)

The complaint does not allege a specific amount of damages, though it does allege that removal under CAFA is not appropriate because the amount in controversy is less than $5,000,000.  (Id. ¶ 9.)

II.  Discussion

Under the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant . . . to the district court of the United States for the district . . . where such action is pending."  28 U.S.C. § 1441(a).  Under CAFA, the federal courts have original

jurisdiction over class actions in which the parties are minimally diverse, the proposed class has at least 100 members, and the aggregated amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2). The parties agree that the parties are minimally diverse and that the proposed class has at least 100 members, and thus the only issue in dispute here is whether the amount in controversy is met.

A defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014). Defendant's allegation is "normally accepted when invoking CAFA jurisdiction, unless it is 'contested by the plaintiff or questioned by the court.'" Jauregui v. Roadrunner Transp. Servs., Inc., 28 F.4th 989, 992 (2022) (quoting Dart Cherokee, 574 U.S. at 89). "When a plaintiff contests the amount in controversy allegation, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" Id. (quoting Dart Cherokee, 574 U.S. at 88).

There is no anti-removal presumption in CAFA cases. Rather, Congress enacted CAFA to "facilitate adjudication of certain class actions in federal court." Dart Cherokee, 574 U.S. at 89. Notably, the Ninth Circuit recently reiterated that "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant." Jauregui, 28 F.4th at 993 (citations omitted). Further, the Ninth Circuit stated that "at this stage of the litigation, the defendant is

being asked to use the plaintiff's complaint -- much of which it presumably disagrees with -- to estimate an amount in controversy." Id.  Therefore, defendant must rely "on a chain of reasoning that includes assumptions to satisfy its burden . . . that the amount in controversy exceeds $5 million, as long as the reasoning and underlying assumptions are reasonable." Id. (citations and quotations omitted).

Defendant relies on payroll and human resources information systems records for California employees from February 2018 to the date of removal, March 10, 2022.  Defendant submits two declarations in support, one from its counsel and one from its HR manager.  (Docket Nos. 7-1, 7-2.)  Defendant calculates that approximately 400 employees are members of the putative class.  (Def.'s Opp'n, Decl. of Kristin M. Halsing ("Halsing Decl.") ¶ 3 (Docket No. 7-1).)  Based on those individuals' start and end dates of employment, they worked a combined total of approximately 12,184 pay periods from February 3, 2018 to the date of removal.  (Id.)  Based on the individuals' current or final rate of pay, their average hourly rate is $25.28.  (Id.)  They also generally are or were paid on a bi-weekly basis and scheduled to work 40 or 36.25 hours per week. (Def.'s Opp'n, Decl. of Megan Hernandez ("Hernandez Decl.") ¶ 3 (Docket No. 7-2).)

In opposition, plaintiff does not submit any evidence, though he is allowed to because he is contesting defendant's alleged amount in controversy.  See Jauregui, 28 F.4th at 992.

A.  Minimum Wage

Under plaintiff's claim for failure to pay minimum

4

wage, plaintiff alleges that he and the putative class members are allowed to recover the unpaid amount of minimum wages, liquidated damages, including interest thereon, statutory penalties, attorneys' fees, and costs of suit.  (Compl. ¶ 75.)

Defendant's assumption that all putative class members were unpaid minimum wages for two hours per pay period (one hour per workweek) is analogous to the defendant's assumption in Cabrera v. South Valley Almond Co., LLC, No. 1:21-cv-00748-AWI-JLT, 2021 WL 5937585 (E.D. Cal. Dec. 16, 2021).  There, the court determined it was reasonable to assume that all putative class members were subject to unpaid minimum wages because the complaint did not "allege subclasses (or otherwise draw relevant distinctions as to the posture of different members of the putative class) and state[d] that the violations were due to 'policies and/or practices.'"  Cabrera, 2021 WL 5937585 at * 8.  Here, plaintiff also makes no distinctions between members of the putative class and alleges there were "uniform payroll policies and practices" that led to unpaid minimum wages.  (Compl. ¶ 24.)

Further, the court in Cabrera determined defendant reasonably assumed one hour of unpaid work per week because the complaint alleged that the "violations occurred 'at times' and 'on occasion,'" and were "due to 'policies and/or practices.'"  Cabrera, 2021 WL 5937585 at * 8.  The allegations in the complaint in Cabrera are similar to the allegations in the complaint here, as plaintiff alleges the violations happened "routinely," there were "periodic shortages in the hours" putative class members were compensated, and the unpaid minimum wages were due to "uniform payroll policies and practices."

5

(Compl. ¶ 24.)

Defendant multiples two hours of unpaid minimum wages by the average minimum wage from 2018 to 2021, $12.50,[1] and multiplies it by the 12,184 pay periods that putative class members worked from February 3, 2018 to the date of removal to estimate that plaintiff and class members could recover $304,600 for the minimum wage claim. (Notice ¶ 27); see Jauregui, 28 F.4th at 994-95 (stating the only issue with an assumption of one hour of unpaid work per week and a similar calculation by the defendant was that the defendant had miscalculated the average minimum wage).

California law also allows plaintiff and class members to recover liquidated damages "in an amount equal to the wages unlawfully unpaid and interest thereon." Cal. Lab. Code § 1194.2(a). Therefore, defendant adds liquidated damages in the same amount to estimate that the minimum wage claim totals $609,200. (Notice ¶ 28.) Defendant's estimated total does not include any statutory penalties that California Labor Code section 1197.1 allows, and plaintiff requests, for unpaid minimum wages. (See compl. ¶ 75.)

Therefore, the court will apply defendant's minimum wage estimate of $609,200 to the CAFA amount in controversy estimate.

B.  Overtime Wages

---

[1] Plaintiff argues that defendant provides no explanation for how it calculates the average hourly rate. (Mot. to Remand at 8.) However, defendant's notice of removal and submitted declarations state how the average minimum wage is calculated and how the average hourly rate for putative class members is calculated. (Notice ¶¶ 27, 31 n.2.; Halsing Decl. ¶ 3.)

6

Plaintiff alleges that he and the putative class are allowed to recover the unpaid amount of overtime premiums, including interest thereon, statutory penalties, attorneys' fees, and costs of suit. (Compl. ¶ 78.) As an initial matter, plaintiff argues that defendant "double counts" allegedly uncompensated time for both minimum wage and overtime damages. (Mot. to Remand at 6-7.) However, the complaint presents separate claims for minimum wages and overtime wages and states different theories for these claims. (Compl. ¶¶ 23-24, 32.) The complaint includes no indication that the two claims are pled in the alternative for the same hours of time. "[B]oth overtime and minimum wages can properly be included in the amount in controversy, since they are separate types of damages." Cabrera, 2021 WL 5937585 at * 9 (quotations and citations omitted). Accordingly, the court will consider estimates for both claims.

Defendant reasonably assumes that all putative class members were unpaid for two hours of overtime per pay period (one hour per week). (Notice ¶ 32-33.) In Cabrera, the court applied the same analysis it did for the unpaid minimum wage claim to the overtime claim to determine that an assumption of one hour of unpaid overtime per week per class member was reasonable. Cabrera, 2021 WL 5937585 at * 8. Here, defendant reasonably assumes that all putative class members were not compensated for overtime work because the complaint does not draw any distinctions between the putative class members. Further, the complaint alleges that putative class members "periodically worked hours that entitled them to overtime compensation" and that class members were not compensated for overtime due to

"uniform and unlawful pay policies and practices." (Compl. ¶¶ 32, 78); see Mortley v. Express Pipe & Supply Co., No. SACV 17-1938-JLS, 2018 WL 708115 at *4 (C.D. Cal. Feb. 5, 2018) ("[A]n assumption of one hour of overtime per week is reasonable when a plaintiff alleges a pattern or practice of violation").

Defendant calculates the amount in controversy for the overtime wage claim to be $924,034.56 based on two hours of unpaid overtime per pay period at plaintiff and putative class members' average hourly rate of $25.28 and the estimated 12,184 pay periods the putative class members worked. (Notice ¶ 32 n.3.) Notably, defendant's estimate does not include any alleged double time owed to plaintiff and putative class members.

Therefore, the court will apply defendant's overtime wage estimate of $924,034.56 to the CAFA amount in controversy estimate.

    C.   Meal and Rest Period Premiums

Plaintiff alleges defendant is responsible for paying premium compensation for meal and rest period violations, including interest thereon, statutory penalties, and costs of suit. (Compl. ¶¶ 82, 85.) Plaintiff alleges that meal and rest break laws were violated because defendant "periodically did not permit" the breaks, and "often expected and required" employees to continue working. (Compl. ¶¶ 37, 45.) Plaintiff also alleges multiple theories for how the meal and rest breaks were noncompliant. (Id. ¶¶ 37, 45 (alleging that breaks were not permitted, breaks that were "duty-free" were not permitted, and a third mandated rest break or second mandated meal break for shifts over 10 hours was not permitted).)

8

1          Based on these allegations and that plaintiff and
2 putative class members were scheduled to work 40 or 36.25 hours
3 per week, defendant reasonably assumes that plaintiff and
4 putative class members missed four meal and/or rest breaks per
5 pay period and are therefore owed four premiums (one hour of pay
6 for each missed meal or rest break) -- a 20 percent violation
7 rate.  (See Notice ¶ 36; Hernandez Decl. ¶ 3); Cal. Lab. Code §
8 226.7.  Defendant's assumption of a 20 percent violation rate is
9 consistent with what other courts have deemed reasonable.  See
10 Cabrera, 2021 WL 5937585, at *6 (holding that a 20 percent
11 violation rate was consistent with allegations in the complaint
12 that violations occurred "at times" and violations were premised
13 on multiple theories "(missed, delayed, interrupted or
14 incomplete)"); Mendoza v. Savage Servs. Corp., No. 2:19-CV-00122-
15 RGK, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (collecting
16 cases in which the courts in the district routinely applied a 20
17 percent violation rate for meal and rest period premiums).
18          Therefore, the court will apply defendant's estimate of
19 $1,232,046.08, based on four meal and/or rest premiums at
20 plaintiff and the putative class's average hourly rate of $25.28
21 and the 12,184 pay periods the putative class worked, to the CAFA
22 amount in controversy estimate.  (Notice ¶ 36.)
23      D.   Failure to Pay Wages During Employment
24          Plaintiff alleges defendant's failure to compensate him
25 and the putative class members based on the violations described
26 above also resulted in defendant's failure to fully pay plaintiff
27 and the putative class members within seven days of the close of
28 payroll as required by law.  (Compl. ¶ 93.)  For this reason,

9

plaintiff seeks penalties in accordance with California Labor Code section 210, which dictates that an initial violation incurs a "$100 penalty for each failure to pay each employee" and each subsequent violation is a "$200 [penalty] for each failure to pay each employee plus 25 percent of the amount unlawfully withheld." Cal. Lab. Code § 210(a).

The statute of limitations for this claim is one year prior to the date of filing. Cal. Civ. Proc. § 340(a). Based on its records, defendant calculates that approximately 363 putative class members worked for defendant from February 3, 2021 to the date of removal and they worked a combined total of 7,773 pay periods. (Halsing Decl. ¶ 4.)

Defendant reasonably assumes that plaintiff and putative class members were not timely paid wages for every pay period based on the complaint's allegations that defendant has a "pattern, practice, and uniform administration of its corporate policy" to deny employees compensation "on a regular and consistent basis." (Compl. ¶¶ 51, 95.) Further, the complaint draws no distinctions between the putative class members, so it is reasonable for defendant to assume that all putative class members were not timely paid wages.

Therefore, the court will apply defendant's estimate of $1,518,300.00 for statutory penalties for failure to pay wages during employment. (Notice ¶ 44.) Notably, defendant's estimate does not include the 25 percent of allegedly withheld wages that plaintiff and putative class members can claim for subsequent violations, and thus defendant's estimate may be lower than what would be justified.

1            E.    Failure to Pay Wages at Separation

2                  Plaintiff alleges defendant's failure to compensate him
3  and the putative class members based on the violations described
4  above leads to failure to fully pay putative class members who no
5  longer work for defendant.  (Compl. ¶ 99.)  Therefore, plaintiff
6  alleges that defendant is liable to "formerly-employed [putative]
7  [c]lass [m]embers for waiting time penalties amounting to thirty
8  days wages" pursuant to California Labor Code section 203, which
9  allows "wages of the employee" to "continue as a penalty from the
10 due date thereof at the same rate until paid or until an action
11 is commenced . . . [up to] 30 days."  (Compl. ¶ 100); Cal. Lab.
12 Code § 203(a).

13                 The statute of limitations for this claim is three
14 years, and therefore, only employees who quit or were fired from
15 February 3, 2019 onward are at issue for this claim.  Cal. Civ.
16 Proc. § 338.  Based on a review of its records, defendant
17 estimates that there are 120 putative class members who were
18 discharged or quit from February 3, 2019 to the date of the
19 notice of removal.  (Halsing Decl. ¶ 5.)  The average hourly rate
20 for these employees was $21.84, based on their hourly rate of pay
21 at the time of their employment separation.  (Id. ¶ 5.)

22                 Here, it is reasonable for defendant to assume that all
23 putative class members who are former employees were owed waiting
24 time penalties because the complaint does not differentiate
25 between any of the putative class members and the claim is
26 premised on defendant's "faulty pay policies."  (Compl. ¶ 100.)
27 Defendant also reasonably assumes a 30-day waiting time penalty
28 for all putative class members because plaintiff alleges that

defendant is liable for "waiting time penalties amounting to thirty day wages." (Id.)  Further, the Ninth Circuit recently held that it is reasonable to assume a maximum 30-day waiting time penalty because the "vast majority (if not all) of the alleged violations . . . would have happened more than 30 days before the suit was filed." Jauregui, 28 F.4th at 994.[2]

Therefore, the court will accept defendant's failure to pay wages at separation estimate of $628,992.00 as part of the CAFA amount in controversy estimate.  (Notice ¶ 48; Hernandez Decl. ¶ 3.)

F. Wage Statements

The complaint alleges defendant's failure to compensate him and the putative class members based on the violations described above leads to failure to provide plaintiff and putative class members with accurate wage statements.  (Compl. ¶ 103.)  Therefore, plaintiff alleges that he and the putative class members are "each entitled to recover an initial penalty of $50, and subsequent penalties of $100, up to an amount not exceeding an aggregate penalty of $4,000" per person.  (Id. ¶ 105 (citing Cal. Labor Code § 226(e)).)

---

[2] Plaintiff cites to this court's decision in Amaya v. Apex Merchant Group, LLC, No. 2:16-cv-00050-WBS, 2016 WL 881152, at *4 (E.D. Cal. Mar. 7, 2016), where the court held it was unreasonable to assume the maximum 30-day waiting time penalty without any supporting evidence.  However, that decision was issued prior to the Ninth Circuit's decision in Jauregui. Further, in Amaya, the complaint "did not allege that every employee was entitled to the full thirty days," whereas here the complaint explicitly alleges defendant is liable to the formerly employed putative class members for "waiting time penalties amounting to thirty day wages," without making any distinctions between the putative class members.  Compare Amaya, 2016 WL 881152, at *4, with (Compl. ¶ 100).

The statute of limitations for this claim is one year. Cal. Civ. Proc. § 340(a). As noted above, defendant calculates that approximately 363 putative class members worked for defendant from February 3, 2021 to the date of removal, and these employees worked a combined total of 7,773 pay periods. (Halsing Decl. ¶ 4.)

It is reasonable for defendant to assume that plaintiff and all putative class members received inaccurate wage statements because the complaint draws no distinctions between the putative class members and plaintiff alleges that they are "each entitled to recover" for the wage statement claim. (Compl. ¶ 105 (emphasis added).) Further, it is reasonable for defendant to assume that every wage statement for the 7,773 pay periods was inaccurate because the complaint contains a comprehensive list of possible errors the wage statements allegedly had, and the complaint states that defendant "knowingly and intentionally" failed to correct its "unlawful practices and policies." (Compl. ¶¶ 54, 56); see Cabrera, 2021 WL 5937585 at *10 (holding that because the court found that "it is reasonable to assume one overtime violation, one minimum wage violation, one meal break violation and one rest period violation per week for each putative class member[,] it follows that each of the bi-weekly wage statements . . . during that period contained an error of some sort.")[3]

---

[3] Plaintiff argues that the recent decision in Naranjo v. Spectrum Security Services, Inc., 40 Cal. App. 5th 444 (2d. Dist. 2019), review granted January 2, 2020, held that unpaid premium wages for meal breaks do not entitle employees to pursue derivative waiting time or wage statement penalties. The Naranjo decision is not binding upon this court and is currently under

Therefore, the court will apply defendant's wage statement penalty estimate of $759,150.00 to the CAFA amount in controversy.  (See Notice ¶ 40.)

Based on reasonable assumptions, the amount in controversy exclusive of interest, costs, and attorney's fees is approximately $5,671,722.64, which exceeds the required $5,000,000 under CAFA.[4]  The court expresses no opinion as to defendant's estimate on attorneys' fees because the amount in controversy is met based on the amount of damages and penalties, and any attorneys' fees would only increase the amount in controversy.  Therefore, consistent with CAFA's "strong preference," this action will be heard in federal court because it was properly removed by defendant.  See Jauregui, 28 F.4th at 993 (citations omitted).

IT IS THEREFORE ORDERED that plaintiff's motion to remand (Docket No. 6) be, and the same hereby is, DENIED.

Dated:  May 17, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

review by the California Supreme Court.  Further, plaintiff's wage statement claim is premised on theories separate from meal break violations.  (Compl. ¶ 54.)

[4]  Defendant's notice of removal does not include the civil penalty that could be imposed for plaintiff's claim for failure to maintain accurate and employment records.  California Labor Code section 1174.5 states that a penalty of $500 incurs upon each violation.